**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Mortesha Mouzon-Johnson, Claimant, Appellant,

v.

Mead Westvaco, Self-Insured Employer, Respondent.

Appellate Case No. 2015-002041

Appeal From The Workers' Compensation Commission

Unpublished Opinion No. 2018-UP-097
Heard December 6, 2017 – Filed February 28, 2018

**AFFIRMED**

Derrick Le'Van Williams and Andrea Culler Roche, of
Mickle & Bass, LLC, of Columbia, for Appellant.

Kirsten Leslie Barr, of Trask & Howell, LLC, of Mt.
Pleasant, for Respondent.

**PER CURIAM:** Mortesha Mouzon-Johnson (Claimant) appeals the denial of her
workers' compensation claim asserting injury by accident to her lungs and
respiratory system, or in the alternative, occupational disease arising from her
employment with Mead Westvaco (Employer). Claimant argues the South
Carolina Workers' Compensation Commission (the Commission) erred in reversing

the single commissioner's order awarding medical benefits, temporary total disability benefits, and permanent disability benefits. We affirm the Commission.

Claimant, who was employed as a chemist for approximately thirteen years, asserts her lungs and respiratory system were injured when she was exposed to certain chemicals at work on June 1, 2012. Because of work restrictions related to a prior episode of Bell's palsy, Claimant was assigned a new chemical analysis to perform on the day of the alleged accident. Upon performing the analysis, Claimant developed pain in the right side of her face and noticed some swelling. After discussing the issue with her supervisor, Claimant was sent home; Claimant feared she was having a recurrence of Bell's palsy.

## I. Injury by Accident or Aggravation of a Preexisting Condition

Claimant argues the Commission erred in finding she did not sustain an injury or suffer an aggravation of a preexisting condition[1] to her lungs or respiratory system on June 1, 2102. We disagree.

Under the Administrative Procedures Act (APA), this court may reverse or modify the decision of the Commission "only if the [appellant]'s substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010); S.C. Code Ann. § 1-23-380(5)(d), (e) (Supp. 2017).

> 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action.

*Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000) (per curiam) (quoting *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981)). "Where there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the Commission are

---

[1] Claimant began receiving treatment for asthma and restrictive lung disease approximately seven years prior to the alleged accident.

conclusive." *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). "The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact." S.C. Code Ann. § 1-23-380(5) (Supp. 2017).

"'Injury' and 'personal injury' mean only injury by accident arising out of and in the course of employment and shall not include a disease in any form, except when it results naturally and unavoidably from the accident . . . ." S.C. Code Ann. § 42-1-160(A) (2015). "The claimant's right to compensation for aggravation of a pre-existing condition arises when the claimant has a dormant condition that becomes disabling because of the aggravating injury." *Murphy v. Owens Corning*, 393 S.C. 77, 86, 710 S.E.2d 454, 459 (Ct. App. 2011). "The employee shall establish by a preponderance of the evidence, including medical evidence, that: (1) the subsequent injury aggravated the preexisting condition or permanent physical impairment; or (2) the preexisting condition or the permanent physical impairment aggravates the subsequent injury." S.C. Code Ann. § 42-9-35(A) (2015).

Although Drs. Andrew Davidson (Allergist), Michael Spandorfer (Claimant's Pulmonologist), and Steve Herndon (Employer's Pulmonologist) diagnosed Claimant with occupationally induced or worsened asthma, the substantial evidence, including Claimant's testimony, does not support her claim that an injury by accident to her lungs and respiratory system occurred on June 1, 2012.

Claimant testified that on June 1, 2012, she "started having a little bit of pain in [her] face . . . [her] face looked swollen." She stated she had an "allergic reaction" and her symptoms included "swelling of the face" and "dilation of the eyes." Claimant conceded she was neither in direct respiratory distress on the day of the alleged accident nor in the days that followed. While Claimant testified she "may have had some breathing issues" following the alleged accident, they were not so severe that she needed her inhaler. In fact, she did not begin using her inhaler more frequently until December 2012, approximately six months after she last worked for Employer. Claimant was unable to specify when her injury occurred, and the only medication she remembered taking on June 1, 2012, was Benadryl.

Claimant's medical records from Employer's medical department note she denied any shortness of breath or wheezing around the time of her alleged accident. At a standing appointment with her neurologist on June 4, 2012, Claimant described her injury as "lip swelling and a problem with swallowing but no shortness of breath and no blurriness of vision." Likewise, at a June 7, 2012 appointment with Allergist, Claimant's lungs were clear, her asthma was stable, and she denied any

shortness of breath, wheezing, or coughing. At an August 23, 2012 appointment with Claimant's Pulmonologist, however, she reported progressive difficulties with shortness of breath, facial swelling, wheezing, chest tightness, and cough. Nevertheless, Claimant's Pulmonologist repeatedly testified he did not have any specific data regarding a June 1, 2012 exposure and admitted his opinion—that her asthma worsened on the date of the alleged accident—was based on Claimant's complaints, which were inconsistent with those previously provided to her other treating physicians. *See Tiller*, 334 S.C. at 338, 513 S.E.2d at 845 ("Where there is a conflict in the evidence . . . the findings of fact of the Commission are conclusive.").

Allergist testified he was "basically relying on the diagnosis and interpretations of the data from the pulmonologist" in diagnosing Claimant with occupationally induced or worsened asthma. Although he testified her injury was causally related to her alleged accident, he further explained, "it was not just on June 1, 2012 . . . . a series of exposures over time that would have caused that." *Contra* S.C. Code Ann. § 42-1-160(F) (2015) ("The word 'accident' as used in this title must not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously, or at frequent intervals in the course of such employment, over extended periods of time. Any injury or disease attributable to such causes must be compensable only if culminating in a compensable repetitive trauma injury pursuant to Section 42-1-172 or an occupational disease pursuant to the provisions of Chapter 11 of this title.").

Significantly, Claimant's medical records reflect she experienced no objective worsening of her condition and no change in her medical treatment following the alleged accident. *See* § 42-9-35(A) ("The employee shall establish by a preponderance of the evidence, including medical evidence, that: (1) the subsequent injury aggravated the preexisting condition or permanent physical impairment; or (2) the preexisting condition or the permanent physical impairment aggravates the subsequent injury."). Thus, substantial evidence supports the Commission's finding that Claimant did not sustain an injury or aggravation of a preexisting condition to her lungs or respiratory system on June 1, 2012.

## II. Wage Earning Capacity

Claimant next argues the Commission erred in finding she did not sustain a loss of wage earning capacity as a result of the accident. We disagree.

Even in viewing this case through the guiding principle that "the Act is to be liberally construed in favor of the claimant," to suggest Claimant's incapacity is causally connected to a June 1, 2012 workplace accident would constitute "surmise, conjecture, or speculation." *Hutson v. S.C. State Ports Auth.*, 399 S.C. 381, 387, 732 S.E.2d 500, 503 (2012); *see also Bundrick v. Powell's Garage & Wrecker Serv.*, 248 S.C. 496, 503, 151 S.E.2d 437, 441 (1966) ("But the award may not rest on surmise, conjecture or speculation; it must be founded on evidence of sufficient substance to afford a reasonable basis for it.").

Notably, Claimant testified she stopped working in June 2012 because her eyes were "swollen" and "purple." She further testified she had an "allergic reaction" and that her symptoms included "swelling of the face" and "dilation of the eyes." The physicians endorsing Claimant's short and long term disability applications in 2012 indicated she had non-work-related problems with left arm weakness, Bell's palsy, and facial swelling that rendered her unable to work. More than a year after the alleged accident, Claimant failed to mention any issues with her lungs or asthma in support of her long term disability claim; however, she did complain in detail about facial swelling and migraine headaches. Thus, substantial evidence in the record supports the Commission's finding that any inability to earn wages is not causally related to Claimant's alleged accident nor to her preexisting asthma.

### III. Permanent Impairment or Loss of Use

Claimant argues the Commission erred in finding she suffered no permanent impairment or loss of use of her lungs or respiratory system. We disagree.

Claimant's Pulmonologist admitted her pulmonary function testing was better in August 2012, approximately two months after her alleged accident, than it was in February 2012. He also admitted her pulmonary function improved between February 2012 and August 2013, and had further improved by April 2014. Moreover, a review of Claimant's medical records revealed that since June 1, 2012, the date of her alleged accident, her asthma treatment regimen had not changed. As of April 2014, Claimant's Pulmonologist noted she was stable, did not require steroids or antibiotics, and only needed intermittent bronchodilator therapy. And Employer's Pulmonologist testified "[t]o a reasonable degree of medical certainty, she likely doesn't require any further treatments above and beyond her baseline therapy for asthma." Therefore, we find the record contains substantial evidence to support the Commission's finding that Claimant suffered no permanent loss of use of her lungs or respiratory system as a result of the alleged accident.

Accordingly, the findings and decision of the Commission are

**AFFIRMED.**

**WILLIAMS, THOMAS, and MCDONALD, JJ., concur.**